**JUDGE CASTEL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

UNITED STATES OF AMERICA; THE
COMMONWEALTHS          OF
MASSACHUSETTS AND VIRGINIA,
THE    STATES    OF    CALIFORNIA,
DELAWARE,          CONNECTICUT,
MARYLAND, COLORADO, FLORIDA,
GEORGIA,     ILLINOIS,     INDIANA,
HAWAII, LOUISIANA, MICHIGAN,
MONTANA, NEW HAMPSHIRE, NEW
MEXICO,    NEW    YORK,    NEVADA,
TENNESSEE, TEXAS, NEW JERSEY,
RHODE     ISLAND,     OKLAHOMA,
WISCONSIN,    NORTH    CAROLINA,
MINNESOTA    AND    WASHINGTON,
THE CITY OF CHICAGO AND THE
DISTRICT OF COLUMBIA *ex rel.*
SHAWNEA HOWERTON,

**Relator**

v.

**COVIDIEN and PRIME PARTNERS
MEDICAL GROUP INC.,**

**Defendants.**

Case No.

14 CV 3289

FILED IN CAMERA & UNDER SEAL
PURSUANT TO 31 U.S.C. §3730(b)(2)

**JURY TRIAL DEMANDED**

**CIVIL ACTION**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. §3729 *et seq.*];
CALIFORNIA FALSE CLAIMS ACT [Cal. Gov. Code
§12650 *et seq.*]; DELAWARE FALSE CLAIMS &
REPORTING ACT [6 Del. C. §1201 *et seq.*]; DISTRICT OF
COLUMBIA PROCUREMENT REFORM AMENDMENT
ACT [D.C. Code Ann. §1-1188.14 *et seq.*]; FLORIDA
FALSE CLAIMS ACT [Fla. Stat. Ann. §68.081 *et seq.*];
ILLINOIS   WHISTLE   BLOWER   REWARD   &
PROTECTION ACT [740 ILCS § 175 *et seq.*]; HAWAII
FALSE CLAIMS ACT [Haw. Rev Stat § 661-21(a)(3)]
MONTANA FALSE CLAIMS ACT; [Mont. Code Ann.
§17-/-410, Mont. Code Ann § 17-8-403]; INDIANA FALSE
CLAIMS ACT AND WHISTLEBLOWERS PROTECTION
ACT   [Ind.   Code   Ann.   §5-11-5.5-1-5-11-5.5-18];
MICHIGAN MEDICAID FALSE CLAIMS ACT [Mich.
Comp Laws § 400.603,606 and 607]; NEW HAMPSHIRE
FALSE CLAIMS ACT [New Hamp. Stat. 167:61-b];
LOUISIANA FALSE CLAIMS ACT [La. Rev. Stat. Ann. §
46:439.1 *et seq.*]; MASSACHUSETTS FALSE CLAIMS
ACT [Massachusetts Gen. Laws c.12 §5(A)]; NEW
MEXICO MEDICAID FALSE CLAIMS ACT [N.M. Stat.
Ann. § 27-14-1-27-14-15]; NEVADA FALSE CLAIMS
ACT [Nev. Rev. Stat. Ann. §357.010 *et seq.*]; TENNESSEE
MEDICAID FALSE CLAIMS ACT [Tenn. Code Ann. §71-
5-181   *et   seq.*];   TEXAS   MEDICAID   FRAUD
PREVENTION ACT [Tex. Human Res. Code, Ch. 36,
§36.101 *et seq.*]; VIRGINIA FRAUD AGAINST
TAXPAYERS ACT [Va. Stat. Ch. 842, Art. 19.1, §8.01-
216.1 *et seq.*]; GEORGIA STATE MEDICAID ACT [Ga.
Code 49-4-168 *et seq.*]; NEW YORK FALSE CLAIMS ACT
[N.Y. St. Finance Law §187 *et* seq.]; CHICAGO FALSE
CLAIMS ORDINANCE [Municipal Code of Chicago §1-22-
010-§1-22-060]; NEW JERSEY FALSE CLAIMS ACT
[N.J. STAT. § 2A:32C-1-17]; RHODE ISLAND FALSE
CLAIMS ACT R.I. GEN. LAWS §9-1.1-1 -9.11-1.8;
OKLAHOMA MEDICAID FALSE CLAIMS ACT 63 OKL.
ST. §5053-5053.7; WISCONSIN STATUTE § 20.931 FOR
FALSE CLAIMS FOR MEDICAL ASSISTANCE; NORTH
CAROLINA FALSE CLAIMS ACT N.C. Gen. Stat. § 1-
605-618, §108A-63; MINNESOTA FALSE CLAIMS ACT
[Minn. Stat. §15C.01 *et. seq.*]; .]; the COLORADO
MEDICAID FALSE CLAIMS ACT, C.R.S. §25.5-4-304, et

seq.; the CONNECTICUT FALSE CLAIMS ACT,
CHAPTER 319v Sec. 17b-301a et seq.; and the
MARYLAND FALSE HEALTH CLAIMS ACT OF 2010,
Subtitle 6, False Claims Against State Health Plans and
State Health Programs, §2-601 *et seq.*;
WASHINGTON MEDICAID FRAUD FALSE
CLAIMS ACT

Plaintiff-Relator Shawnea Howerton ("Relator" or "Plaintiff"), through her undersigned

attorneys, on behalf of the United States of America ("United States"), and the State of

California, the State of Delaware, the State of Florida, the State of Georgia, the State of Illinois,

the State of Hawaii, the State of Indiana, the State of Louisiana, the Commonwealth of

Massachusetts, the State of Michigan, the State of New Mexico, the State of Montana, the State

of New Hampshire, the State of New York, the State of Nevada, the State of Tennessee, the State

of Texas, the Commonwealth of Virginia, the State of New Jersey, the State of Rhode Island, the

State of Oklahoma, the State of Wisconsin, the State of North Carolina, the State of Minnesota,

the State of Connecticut, the State of Colorado, the State of Maryland, the State of Washington,

the City of Chicago, and the District of Columbia (collectively, "the States and City"), for her

Complaint against Defendants Covidien, Prime Partners Medical Group, Inc. and Donald Woo

Lee, M.D., alleges as follows:

## 1.   PRELIMINARY STATEMENT

1.     This is a civil action brought by the Relator Shawnea Howerton against Covidien,

Prime Partners Medical Group Inc., and Donald Woo Lee, M.D. under the False Claims Act, 31

U.S.C. §§ 3729-33 (the "FCA"), and the common law to recover treble damages sustained by,

and civil penalties and restitution owed to, the United States based on Covidien's violations of

the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b(b), for engaging in a kickback

scheme with doctors to induce them to use certain Covidien catheters for radiofrequency vein

ablation procedures that were reimbursed by federal health care programs. As set forth more

fully below, from at least 2012 (or prior) to the present, Covidien systemically induced doctors,

including but not limited to Defendants Dr. Donald Woo Lee and Prime Partners Medical Group,

Inc., to hire marketing representatives for ultrasound procedures to be performed in neighboring doctors' offices and in patients' homes in an effort to gain more patients for radiofrequency vein ablation procedures in which Covidien catheters would be used. According to Relator, in the State of California, Defendants Lee and Prime Partners conspired with Covidien in this kickback scheme.

2.     Relator is a former employee of Prime Partners. She worked as an Administrator/Marketing Agent for Prime Partners from approximately February 2010 through September 2013.

3.     Relator's daughter, Tiffany Brown, also worked for Prime Partners as a Marketing Representative from October 2012 through February 2014, as well as a Marketing Field Specialist for Covidien Venous Vascular from January 2013 through December 2013. She was laid off from Covidien in December 2013.

4.     As discussed more fully below, Relator Howerton and her daughter Tiffany Brown acted as patient recruiters for Defendants.

5.     Relator has complied with all service requirements for the federal government and every State and City that is a party to the Complaint.

6.     Relator will serve a copy of this Complaint on the federal government and every State and City that is a party to the Complaint.

7.     As required by the state, federal and city False Claims Acts and ordinances, this Complaint is being filed under seal and shall not be served on the defendant until the court so orders.

8.     The allegations contained herein are not based upon any public disclosure.

9.     Unless otherwise stated herein, Relator Shawnea Howerton is the original source of the information upon which this Complaint is based.

10.    Unless otherwise stated herein, Relator has direct and independent knowledge on which the allegations herein are based and has voluntarily provided this information to the United States, the various states and the City of Chicago before filing this action.

**2.     JURISDICTION AND VENUE**

11.    This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345, and over the remaining claims pursuant to 28 U.S.C. § 1345.

12.    Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1391(c), because Covidien resides in and does business in this District and some of the false or fraudulent acts occurred in this District.

**3.     PARTIES**

13.    Relator Shawnea Howerton, is a resident of California and a former employee of Prime Partners Medical Group, Inc., a company owned and operated by Donald Woo Lee, M.D. Relator worked for Prime Partners as an Administrator and in a marketing capacity from February 2010 through September 2013.  Relator's hours increased from 20 hours to 40 hours per week once Dr. Lee launched his ultrasound program.  Prior to working for Defendants Prime Partners Medical Group, Inc. and Dr. Lee, Relator worked as a Pharmacy Technician and as Director of Marketing for the Medicine Shoppe in California.

14.    Defendant Covidien is a subsidiary of Covidien plc, a global healthcare products company headquartered in Dublin, Ireland.  Covidien, which is headquartered in Mansfield,

Massachusetts, does business throughout the United States, including in the Southern District of New York.   Covidien has at least two manufacturing facilities in the State of New York where it produces products for global distribution.

15.     Defendant Prime Partners Medical Group, Inc. ("Prime Partners") is a California corporation based in Los Angeles, California.  Prime Partners' principle place of business is located at 27555 Ynez Road, Temecula, California.

16.     Defendant Donald Woo Lee, M.D. is citizen and resident of the State of California.  Dr. Lee is a licensed physician in the State of California.  Dr. Lee currently practices in the State of California and owns Prime Partners Medical Group.  Dr. Lee also has a number of suspended corporations associated with his name including, Prime Partners Cardiovascular Medical Group, Inc. and Prime Partners Medical Group of Corona, Inc.  Upon information and belief, Dr. Lee also operates under UIC Vein Center, a company owned by his daughter, Alexa Lee.

## 4.     FACTUAL ALLEGATIONS

### a.   The Anti-Kickback Statute and the False Claims Act

17.     The FCA establishes liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," § 3729(a)(1)(A); or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B).  "Knowingly" is defined to include actual knowledge, reckless disregard and deliberate indifference.  § 3729(b)(1).  No proof of specific intent to defraud is required.  *Id.*

18.     The AKS makes it illegal for individuals or entities to knowingly and willfully "offer[] or pay[] remuneration (including any kickback, bribe, or rebate) . . . to any person to induce such person . . . to purchase, . . . order, . . . or recommend purchasing ... or ordering any good . . . or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2). Payments by a medical device company to doctors to marketers working on behalf of doctors to effectively gain patients for medical procedures where the medical device company's product will be billed for and used is an example of such illegal remuneration. Violation of the AKS is a felony punishable by fines and imprisonment and can also result in exclusion from participation in federal health care programs. 42 U.S.C. § 1320a-7b(b)(2) and 42 U.S.C. § 1320a-7b(b)(7).

19.     The AKS arose out of congressional concern that remuneration given to those who can influence health care decisions would result in goods and services being provided that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the Medicare and Medicaid programs, among other federal health care programs, from these harms, Congress enacted a prohibition against the payment of kickbacks in any form. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. *See* Social Security Amendments of 1972, Publ. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Publ. L. No. 95-142; Medicare and Medicaid Patient Program Protection Act of 1987, Pub. L. No. 100-93.

20.     As codified in the Patient Protection and Affordable Care Act of 2010 ("PPACA"), Pub. L. No. 111-148, § 6402(f), 124 Stat. 119, codified at 42 U.S.C. § 1320a-7b(g),

"a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]."

21.     According to the legislative history of the PPACA, this amendment to the AKS was intended to clarify "that all claims resulting from illegal kickbacks are considered false claims for the purpose of civil actions under the False Claims Act, even when the claims are not submitted directly by the wrongdoers themselves." 155 Cong. Rec. S 10854.

22.     Compliance with the AKS, 42 U.S.C. § 1320a-7b(b), is a condition of payment under the federal health care programs.

23.     By providing kickbacks to physicians by paying for and providing assistance with ultrasound marketing, Covidien induced physicians to use certain Covidien products, including its catheters, causing false claims to be submitted to federal health care programs.

24.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999), the FCA civil penalties are $5,500 to $11,000 for violations, such as those alleged here, occurring on or after September 29, 1999.

### b. The Federal Health Care Programs

25.     For the catheters at issue in this case, Dr. Lee would purchase catheters from Covidien to be used in patients during radiofrequency vein ablation procedures. Dr. Lee would submit claims for to the relevant federal healthcare programs for reimbursement. Similarly, other physicians around the country would do the same. The reimbursement rate for a radiofrequency vein ablation procedure is approximately $3,000.00.

26.    **Medicare**. Medicare is a federal program that provides federally subsidized health insurance primarily for persons who are 65 or older or disabled. See 42 U.S.C. §§ 1395 *et seq.* ("Medicare Program"). Part D of the Medicare Program was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, to provide prescription drug benefits for Medicare beneficiaries. All persons enrolled in Medicare Part A and/or Medicare Part B are eligible to enroll in a prescription drug plan under Part D. HHS, through its component agency, the Centers for Medicare and Medicaid Services ("CMS"), contracts with private companies (or "sponsors") authorized to sell Part D insurance coverage. Such companies are regulated and subsidized by CMS pursuant to one-year, annually renewable contracts.

27.    Medicare enters into provider agreements with physicians to establish their eligibility to participate in the program. To be eligible for payment under the program physicians must certify that they agree to comply with the Anti-Kickback Statute, among other federal health care laws.

28.    On the Medicare provider enrollment agreement, the "Certification Statement" that the medical provider signs states: "You MUST sign and date the certification statement below in order to be enrolled in the Medicare program. In doing so, you are attesting to meeting and maintaining the Medicare requirements stated below." Those requirements include:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me . . . The Medicare laws, regulations and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

\*\*\*\*\*

> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

CMS Form 8551.

29.     In addition, when medical devices are reimbursed under Medicare Part D, Part D sponsors must certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse, including, but not limited to, the Anti-Kickback Statute. 42 C.F.R. § 423.505(h)(1 ).

30.     *Medicaid.* Medicaid is a joint federal-state program created in 1965 that provides health care benefits for certain groups, primarily the poor and disabled. The federal portion of each state's Medicaid payments, known as the Federal Medical Assistance Percentage ("FMAP"), is based on the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). Among the states, the FMAP is at least 50 percent and is as high as 83 percent.

31.     The Medicaid programs of all states reimburse for medical devices used during covered medical procedures. The vast majority of states award contracts to private companies to evaluate and process claims for payment on behalf of Medicaid recipients. Typically, after processing the claims, these private companies then generate funding requests to the state Medicaid programs. Before the beginning of each calendar quarter, each state submits to CMS an estimate of its Medicaid federal funding needs for the quarter. CMS reviews and adjusts the quarterly estimate as necessary, and determines the amount of federal funding each state will be permitted to draw down as it incurs expenditures during the quarter. The state then draws down

federal funding as actual provider claims, including claims from pharmacies seeking payment for drugs, are presented for payment. After the end of each quarter, the state then submits to CMS a final expenditure report, which provides the basis for adjustment to the quarterly federal funding amount (to reconcile the estimated expenditures to actual expenditures). 42 C.F.R. § 430.30.

32. Claims arising from illegal kickbacks are not authorized to be paid under state regulatory regimes.

33. Certifications that physicians supply to the States for Medicaid reimbursement include compliance with the Anti-Kickback Statute, among other federal health care laws.

34. A provider who participates in the Medicaid program must sign an agreement with his or her state that certifies compliance with the state and federal Medicaid requirements, including the AKS. Although there are variations among the states, the agreement typically requires the prospective Medicaid provider to agree that he or she will comply with all state and federal laws and Medicaid regulations in billing the state Medicaid program for services or supplies furnished.

35. **TRICARE.** TRICARE, administered by the Department of Defense ("DOD"), is the United States military's health care system, designed to maintain the health of active duty service personnel, provide health care during military operations, arid offer health care to non-active duty beneficiaries, including dependents of active duty personnel and military retirees and their dependents. TRICARE operates through various military-operated hospitals and clinics worldwide and is supplemented through contracts with civilian health care providers. TRICARE is a triple-option benefit program designed to give beneficiaries a choice between health maintenance organizations, preferred provider organizations, and fee-for-service benefits.

36.     TRICARE requires physicians to certify to compliance with the Anti-Kickback Statute, among other federal health care laws.

37.     ***Veterans Administration Health Care.*** The Department of Veteran Affairs ("VA") maintains a system of medical facilities from which all pharmaceutical supplies, including prescription drugs and pharmaceutical products, are purchased directly or indirectly by the VA and dispensed to beneficiaries. It also supports a mail service prescription program as part of the outpatient drug benefit. The system serves approximately four million veterans.

### c.  The Kickback Scheme

38.     As outlined more fully below, the kickback scheme involves Covidien guaranteeing patient referrals to doctors for radiofrequency vein ablation procedures and defraying marketing costs in exchange for the physician's promise to exclusively use Covidien catheters for these medical procedures.

39.     The kickback scheme involving Dr. Lee, Prime Partners and Covidien involves government monies in the state of California.

40.     According to Relator, the same kickback scheme was implemented by Covidien in other areas of California and in other states, including but not limited to the states of Hawaii, Nevada and Arizona.

41.     Relator states that Covidien employed 43 so-called "marketers" nationally implementing the same kickback scheme nationally.  Relator learned this information from Covidien Sales Marketing Manager, Rick Ponder.  Mr. Ponder's territory included Hawaii, Nevada, Arizona and California.

42.     In August 2012, Dr. Lee started his vein practice specializing in vein ablations.

43.     At that time, Relator Howerton attended a meeting with Dr. Lee, Rick Ponder, Covidien sales representative Paul Olsen, and per diem Covidien ultrasound technician Virginia Ratcliff. The meeting was to discuss the ways to develop Dr. Lee's vein practice and thereby increase Covidien catheter sales.

44.     As a result of this meeting, Dr. Lee's ultrasound program launched on or about August 25, 2012.

45.     The ultrasound program focused on providing ultrasounds to covered patients in the community in order to obtain patient referrals for radiofrequency vein ablations ("RFAs"), also known as the "Venefit" procedure. As part of this program, Covidien agreed to defray some of Dr. Lee's marketing expenses in exchange for his promise to use one of the Covidien ClosureFast Endovenous Radiofrequency Ablation Catheters ("catheter") during the RFAs.

46.     Once the ultrasound program launched, Relator's weekly hours increased from 20 to 40 hours per week with the understanding that Covidien would cover the extra 20 hours.

47.     Upon the launch of the ultrasound program, a "marketer" was hired to market Dr. Lee's RFA practice and the ultrasound program.

48.     The first marketer that was hired had quit 2 weeks into the program.

49.     The second marketer hired was Tiffany Brown, Relator's daughter.

50.     Covidien sales representative, Paul Olson, worked with Tiffany and Relator to get the ultrasound program up and running.

51.     The plan was to perform ultrasounds within the community – in neighboring physician offices, stores such as Kmart, Walmart, Costco, Sport Chalet, local pharmacies, senior citizen apartment communities, and health fairs.

52.     The kickback scheme preyed on the senior patient population because venous insufficiency is part of the natural aging process. Most patients who qualified for RFAs were in their late 50's to early 70's; however, Relator is aware of patients over 80 years old who received the procedure. Dr. Lee instructed Relator and Tiffany Brown to recruit patients in senior apartment complexes, senior care centers, and in Walmart and Kmart.

53.     Dr. Lee would also write orders for home health agencies and medical supply companies in exchange for patient referrals.

54.     Paul Olson accompanied Tiffany Brown to approximately 6-10 lunch meetings, where they met with doctors and staff at neighboring doctors' offices.

55.     At these meetings, Tiffany Brown was introduced as a "marketer" and the ultrasound program was described to doctors as a "Covidien program." Ms. Brown's introduction was purposely ambiguous so doctors believed they were working with Covidien.

56.     When meeting with doctors and staff, they were shown a Covidien PowerPoint presentation about venous insufficiency, given a written contract concerning the ultrasounds and a Covidien packet that contained Dr. Lee's business card, and provided with ICD-9 codes. Offices were also told that the ultrasound program was a way to generate more revenue.

57.     Doctors and staff were told that a venous mapping would be done in their office on their patients.

58.     The written contract verified the terms and conditions of the venous mapping, including a $30.00 charge per ultrasound study per patient.

59. In turn, if a patient qualified for venous insufficiency, that patient was given once of Dr. Lee's cards. According to Relator and Tiffany Brown, they were instructed to try to schedule the patient for a RFA that same day to avoid losing the business.

60. The patients were given a Covidien brochure, told that the results of the venous mapping would be provided to their doctor to review with them and that they could schedule the procedure.

61. No referral was needed for Medicare patients, and Relator and Tiffany Brown were told not to spend too much time doing venous mapping on patients with incorrect insurance.

62. Dr. Lee had also instructed one of his ultrasound tech to inflate the patients' results so they are in within Medicare's standard guidelines.

63. Dr. Lee also instructed his employees to provide staff at neighboring physician offices with gift cards and cash. Neither Relator nor Tiffany Brown engaged in this conduct.

64. According to Relator and Tiffany Brown, Covidien would not offer the ultrasound program to doctors' offices unless they agreed to consistently refer their patients to Dr. Lee for the RFAs. This resulted in guaranteed patient referrals for Dr. Lee in exchange for Dr. Lee's promise to exclusively use Covidien catheters.

65. Covidien sales representative Paul Olson while attending a venous ultrasound program luncheon with Tiffany Brown at Temecula Valley Cardiology told the doctor in charge that Covidien could not work with his group because he would not agree to use Dr. Lee.

66. As part of the inducement to get Dr. Lee to use only Covidien catheters during the RFAs, Covidien provided the following: (1) paid salaries for marketers – including Relator,

Tiffany Brown, Virginia Ratcliff; (2) free catheters; (3) free marketing materials; (4) a generator to do the RFAs which costs approximately $50,000; and (5) paid lunches to market venous ultrasound program.

67.     Relator was told that these freebies given to Dr. Lee totaled over $200,000.

68.     According to Relator, a doctor located in El Paso, Texas, was doing up to 400 RFAs / month as a result of the ultrasound program. Dr. Lee was doing approximately 100 RFAs / month.

69.     In December 2013, Covidien terminated the employ of the 43 national marketers who were promoting the ultrasound program, including Tiffany Brown. Relator heard that since the layoffs at least one of these marketers was hired back and others may have been too.

## COUNT I

### Violations of the False Claims Act: Presenting False Claims for Payment (31 U.S.C. § 3729(a) (1) (2006), and, as amended, 31 U.S.C. § 3729(a)(l)(A))

70.     Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

71.     The Relator seeks relief against defendants under Section 3729(a)(l) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(2006), and, as amended, 31 U.S.C. § 3729(a)(l)(A).

72.     As a result of Covidien's kickbacks to induce doctors, including Defendants Lee and Prime Partners in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2), false and fraudulent claims for payment for Covidien's medical devices, including catheters, were made to federal health care programs. Accordingly, Covidien

and the other Defendants knowingly caused to be presented false or fraudulent claims for

payment or approval in violation of 31 U.S.C. § 3729(a)(I)(2006), and, as amended, 31

U.S.C. § 3729(a)(l)(A).

73.     By reason of the false or fraudulent claims, the United States has sustained

damages in a substantial amount to be determined at trial, and is entitled to treble damages

plus a civil penalty for each violation.

## COUNT II

## Violations of the False Claims Act: Use of False Statements (31U.S.C. § 3729(a)(2) (2006), and, as amended, 31U.S.C. § 3729{a)(1)(B))

74.     The Relator incorporates by reference paragraphs the preceding paragraphs as if

fully set forth herein.

75.     The Relator seeks relief against defendants under the False Claims Act, 31 U.S.C.

§ 3729(a)(2)(2006), and, as amended, 31 U.S.C. § 3729(a)(l)(B).

76.     As a result of Covidien's kickbacks to induce doctors and health care providers to

perform ultrasounds on patients and in turn refer the patients for radiofrequency vein ablation

procedures to Dr. Lee, Prime Partners as well as other doctors across the country, in violation of

the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2), Defendants knowingly caused

doctors to make false records or statements that were material to false or fraudulent claims for

payment submitted to federal health care programs. The false records or statements were the

doctors' false certifications and representations of full compliance with all federal and state laws

and regulations prohibiting fraudulent and false reporting, including but not limited to the Anti-

Kickback Statute, 42 U.S.C. § 1320a-7b.

77.     By reason of these false records or statements, the United States has sustained

damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a

civil penalty for each violation.

## COUNT III

78.     Relator incorporates by reference the preceding paragraphs as if fully set forth in
this paragraph.

79.     Relator seeks relief against Defendant Covidien under Section 3729(a)(3) of the

FCA, 31 U.S.C. § 3729(a)(3) (1986), and, as amended, 31 U.S.C. § 3729(a)(1)(C).

80.     As set forth above, Covidien conspired with numerous doctors, including Dr. Lee,

to offer and pay kickbacks in exchange for using its catheters during radiofrequency vein

ablation procedures in violation of the AKS, 42 U.S.C. § 1320a-7b(b)(2), thereby causing the

physicians to submit false and fraudulent claims to Medicare and Medicaid seeking

reimbursement for Covidien catheters in connection with the kickback scheme.

81.     Accordingly, Covidien conspired to defraud the United States by getting false or

fraudulent claims allowed or paid, in violation of 31 U.S.C. § 3729(a)(3) (1986), and conspired

to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and § 3729(a)(1)(B), in violation of 31

U.S.C. § 3729(a)(1)(C) (2009).

82.     By reason of the false or fraudulent claims Covidien and the physicians conspired

to get allowed or paid or by reasons of their conspiracy to violation 31 U.S.C. §3729(a)(1(A) and

§3729(a)(1)(B), the government has been damaged and is entitled to recover treble damages plus

a civil monetary penalty for each false claim.

## COUNT IV

### Unjust Enrichment

83.     The Relator incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

84.     The United States paid claims submitted to federal health care programs for reimbursement for Defendants based on false statements submitted to federal health care programs as a result of Covidien's, as well as Dr. Lee's and Prime Partners', violations of applicable federal and state laws and regulations, including the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. The circumstances of Covidien's, as well as in this particular instance Dr. Lee's and Prime Partners, receipt of payments based on the kickbacks are such that, in equity and good conscience, Defendants should not retain those payments, the amount of which is to be determined at trial.

## COUNT V

### California False Claims Act
### Cal. Government Code §§ 12650-12655

85.     Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

86.     This is a claim against Defendants Covidien, as well as Dr. Lee and Prime Partners, for treble damages and penalties on behalf of the State of California under the California False Claims Act, California Government Code §§ 12650-12655.

87.     By virtue of the above-described acts, among others, Defendant Covidien engaged in a kickback scheme with Defendant Dr. Lee and Prime Partners, as well as other physicians, health care providers and physician groups nationwide, in order to sell its catheters.

88.     By virtue of the above-described unlawful acts, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to

induce the California State Government to approve and pay such false and fraudulent claims under the Medicaid program.

89.    The payment of receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code § 14107.2.

90.    Defendant violated Cal. Bus. & Prof. Code § 650 and 650.1 and Cal. Welf. & Inst. Code § 14107.2 by engaging in the conduct alleged herein.

91.    Defendant furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, Cal. Bus. & Prof. Code § 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government funded healthcare programs.

92.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

93.    Compliance with applicable Medicare, Medi-Cal and the various other federal and state laws cited herein was an implied, and upon information and belief; also an express condition of payment of claims submitted to the State of California in connection with Defendant's conduct. Compliance with applicable California statutes and regulations was also an express condition of payment of Claims submitted to the State of California.

94.     Had the State of California known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

95.     By reason of Defendants' conspiracy and unlawful acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

96.     The State of California is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

97.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of himself and the State of California.

98.     This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator demands judgment against Defendants Covidien, Dr. Lee and Prime Partners as follows:

a.      That by reason of the aforementioned violations of the California False Claims Act that this Court enter judgment in Plaintiff's favor and against Defendants in an amount equal to not less than two times and not more than three times the amount of

damages that California has sustained because of Defendants' actions, plus a civil penalty of not more than $10,000 for each violation of CAL. GOV. CODE §12651(a)(3);

b.      That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant to CAL. GOV. CODE §12652(g)(2) and/or any other applicable provision of law;

c.      That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Relator have such other and further relief that this Court deems just and proper.

## COUNT VI

### Delaware False Claims and Reporting Act 6 Del C. §1201(a)(1) and (2)

99.      Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

100.      This is a claim for treble damages and penalties against Defendant Covidien on behalf of the State of Delaware under the Delaware False Claims and Reporting Act, 6 Del C. §1201(a)(1) and (2).

101.      By virtue of the above-described acts, among others, Defendant Covidien engaged in a kickback scheme with physicians, health care providers and physician groups nationwide, in order to sell its catheters.

102.      In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebates) directly or indirectly, overtly or covertly,

in cash or in kind in return for the furnishing of any medical care or services for which payment may be made in whole or in part under any public assistance program.

103. Defendant violated 31 Del. C. § 1005 by engaging in the conduct alleged herein.

104. Defendant further violated 6 Del. C. § 1201(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Delaware by its deliberate and systematic violation of federal and state laws, including the FDCA, the Anti-Kickback Act, and 31 Del. C. § 1005 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

105. By virtue of the above-described acts, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Delaware State Government to approve and pay such false and fraudulent claims.

106. The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal inducements and/or business practices.

107. By reason of Defendant's conspiracy and unlawful acts, the State of Delaware has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

108. The State of Delaware is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

109.    Relator is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action on behalf of himself and the State of

Delaware.

110.    This Court is requested to accept supplemental jurisdiction over this related state

claim as it is predicated upon the same exact facts as the federal claim, and merely asserts

separate damages to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.      That by reason of the aforementioned violations of the Delaware false

claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien

in an amount equal to not less than two times and not more than three times the amount

of damages that Delaware has sustained because of Covidien's actions, plus a civil

penalty of not less than $5,500 and not more than $11,000 for each violation of DEL.

CODE ANN. TIT. 6 §1201(a)(3);

b.      That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount

allowed pursuant to DEL. CODE ANN. §1205(a) and/or any other applicable provision

of law;

c.      That Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT VII

### District of Columbia Procurement Reform Amendment Act
### Violation of D.C. CODE ANN. §§ 2-308.13-.15

111.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

112.    This is a claim for treble damages and penalties against Defendant Covidien on

behalf of the District of Columbia under the District of Columbia Procurement Reform

Amendment Act.

113.    By virtue of the above-described acts, among others, Defendant Covidien engaged

in a kickback scheme with physicians, health care providers and physician groups nationwide, in

order to sell its catheters.

114.    D.C. Code § 2-308.14(a) provides liability for any person who-

>    (1) knowingly presents, or causes to be presented, to an officer or employee
>         of the District, a false claim for payment or approval;
>    (2) knowingly makes, uses, or causes to be made or used, a false record or
>         statement to get a false claim paid or approved by the District;
>    (3) conspires to defraud the District by getting a false claim allowed or paid
>         by the District;
>         * * *
>
>    (8) is the beneficiary of an inadvertent submission of a false claim to the
>         District, subsequently discovers the falsity of the claim, and fails to
>         disclose the false claim to the District.

115.    In addition, D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to

accept any type of remuneration for the following:

>    (1) Referring a recipient to a particular provider of any item or service
>         or for which payment may be made under the District of Columbia
>         Medicaid program, or
>    (2) Recommending the purchase, lease, or order of any good, facility,
>         service, or item for which payment may be made under the District
>         of Columbia Medicaid Program.

116.    Defendant Covidien violated D.C. Code § 4-802(c) by engaging in the illegal conduct alleged herein.

117.    Defendant further violated 6 Del. Code § 1201(a) and knowingly caused thousands of false claims to be made, used and presented to the District of Columbia by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act D.C. Code § 4-802(c), and by virtue of the fact that none of the claims submitted in connection with its illegal conduct were even eligible for reimbursement by the government-funded healthcare programs.

118.    The District of Columbia, by and through the District of Columbia Medicaid program and other District healthcare programs, and unaware of Defendant's illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

119.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the District of Columbia in connection with Defendant's illegal conduct.  Compliance with applicable D.C. statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the District of Columbia.

120.    Had the District of Columbia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

121.    As a result of Defendant's violations of D.C. Code § 2-308.14(a), the District of Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

122.    The District of Columbia is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

123.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action behalf of himself and the District of Columbia.

124.    This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against defendant Covidien as follows:

a.    That by reason of the aforementioned violations of the District of Columbia false claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the District of Columbia has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of DC. CODE ANN.  §2-308.14(a)(3);

b.    That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant DC. CODE ANN.  §2-308.15(f)(1) and/or any other applicable provision of law;

c.      That Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT VII

**Florida False Claims Act**
**Fl. Stat. §68.081-68.090**

125.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

126.    This is a claim for treble damages and penalties against the Defendant on behalf

of the State of Florida under the Florida False Claims Act, Fl. Stat. §68.081-68.090.

127.    Fla. Stat. § 68.082(2) provides liability for any person who-

(a) knowingly presents, or causes to be presented, to an officer or employee of an
agency a false or fraudulent claim for payment or approval;
(b) knowingly makes, uses, or causes to be made or used, a false record or
statement to get a false or fraudulent claim paid or approved by an agency;
(c) conspires to submit a false claim to an agency or to deceive an agency for the
purpose of getting a false or fraudulent claim allowed-or paid.

128.    In addition, Fla. Stat. § 409.920 makes it a crime to:

(c) knowingly charge, solicit, accept, or receive anything of value, other than an
authorized copayment from a Medicaid recipient, from any source in addition to the
amount legally payable for an item or service provided to a Medicaid recipient under the
Medicaid program or knowingly fail to credit the agency or its fiscal agent for any
payment received from a third-party source;

* * *

(e) knowingly, solicit, offer, pay or receive any remuneration, including any kickback,
bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for
referring an individual to a person for the furnishing of any item or service for which
payment may be made, in whole or in part, under the Medicaid program, or in return for

obtaining, purchasing, leasing, ordering, or arranging, for or recommending, obtaining, purchasing, leasing, or ordering any goods, facility, item, or service, for which payment may be made, in whole or in part, under the Medicaid program.

129.     Fla. Stat. §456.054(2) also prohibits the offering, payment, solicitation, or receipt of a kickback to a healthcare provider, whether directly or indirectly, overtly or covertly, in cash or in kind, in exchange for referring or soliciting patients.

130.     Defendant Covidien violated Fla. Stat. § 409.920(c) and (e) and §456.054(2) by engaging in the conduct alleged herein.

131.     Defendant Covidien further violated Fla. Stat. § 68.082(2) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Florida by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti- Kickback Act, Fla. Stat. § 409.920(c) and (e) and §456.054(2) and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded  healthcare programs.

132.     The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

133.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Defendant Covidien's conduct.

134.     Had the State of Florida known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's

conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

135.    As a result of Defendant's violations of Fla. Stat. § 68.082(2), the State of Florida has been damaged in an amount far in excess of millions of dollars exclusive of interest.

136.    By virtue of the above-described acts, Defendant Covidien knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Florida State Government to approve and pay such false and fraudulent claims.

137.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant Covidien, paid and continues to pay the claims that would not be paid but for Defendant's illegal inducements and/or business practices.

138.    By reason of the Defendant's unlawful acts, the State of Florida has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

139.    The State of Florida is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

140.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action behalf of himself and the District of Columbia.

141.    This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against defendant Covidien as follows:

        a.      That by reason of the aforementioned violations of the Florida false claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that Florida has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of FLA. STAT. ANN. §68.082(2)(a)(3);

        b.      That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant FLA. STAT. ANN. §68.085(1)-(2) and/or any other applicable provision of law;

        c.      That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

        d.      That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT VIII

### Illinois Whistleblower Reward and Protection Act CS 175/1 *et seq.*

142.    Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

143.   This is a claim for treble damages and penalties against the Defendant Covidien on behalf of the State of Illinois under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 17511 et seq.

144.   This is a qui tam action brought by Relator on behalf of the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 et seq.

145.   740 ILCS 175/3(a) provides liability for any person who:

    (1)   knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

    (2)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    (3)   conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

146.   In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Illinois Medicaid program.

147.   Defendant Covidien violated 305 ILCS 5/8A-3(b) by engaging in the conduct alleged herein.

148.    Defendant Covidien furthermore violated 740 ILCS 175/3(a) and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of

Illinois by its deliberate and systematic violation of federal and state laws, including the FDCA,

federal Anti-Kickback Act, and the Illinois Vendor Fraud and Kickback statute, and by virtue of

the fact that none of the claims submitted in connection with its conduct were even eligible for

reimbursement by the government-funded healthcare programs.

149.    The State of Illinois, by and through the Illinois Medicaid program and other state

healthcare programs, and unaware Defendant Covidien's conduct, paid the claims submitted to

healthcare providers and third party payers in connection therewith.

150.    Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of Illinois in connection with Defendant

Covidien's conduct.  Compliance with applicable Illinois statutes and regulations was also an

express condition of payment of claims submitted to the State of Illinois.

151.    Had the State of Illinois known that Defendant Covidien was violating the federal

and state laws cited herein and/or that the claims submitted in connection with Defendant

conduct failed to meet the reimbursement criteria of the government-funded healthcare programs

or were premised on false and/or misleading information, it would not have paid the claims

submitted by healthcare providers and third party payers in connection with that conduct.

152.    As a result of Defendant's violations of 740 ILCS 175/3(a), the State of Illinois

has been damaged in an amount far in excess of millions of dollars exclusive of interest.

153.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action on behalf of himself and the State of Illinois.

154.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against defendant Covidien as follows:

a.    That by reason of the aforementioned violations of the Illinois Whistleblower Reward and Protection Act that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that Illinois has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of ILL. COMP. STAT. 175/3(a)(3);

b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant ILL. COMP. STAT. 175/4(d)(1) and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT IX

## Hawaii False Claims Act
## HAW. REV. STAT. §§661-21 to 661-29

155.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

156.    This is a claim for treble damages and penalties against the Defendant on behalf

of the State of Hawaii under the HAW. REV. STAT. §661-21(a)(3).

157.    This is a qui tam action brought by Relator on behalf of the State of Hawaii to

recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. §

661-21 et seq.

158.    Haw. Rev. Stat. § 661-21(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the
state a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses, or causes to be made or used, a false record or
statement to get a false or fraudulent claim paid for by the state;
(3) conspires to defraud the state by getting a false or fraudulent claim allowed or
paid; or

* * *

(8) is a beneficiary of an inadvertent submission of a false claim to the State, who
subsequently discovers the falsity of the claim, and fails to disclose the false
claim to the State within a reasonable time after discovery of the false claim.

159.    Defendant Covidien violated Haw. Rev. Stat. §661-21(a) and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of Hawaii by

its deliberate and systematic violation of federal and state laws, including the FDCA and Anti-

Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its

conduct were even eligible for reimbursement by the government-funded healthcare programs.

160.     The State of Hawaii, by and through the Hawaii Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

161.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendant's conduct.  Compliance with applicable Hawaii statutes and regulations was also an express condition of payment of claims submitted to the State of Hawaii.

162.     Had the State of Hawaii known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and / or misleading information, it never would have paid the claims submitted by healthcare health care providers and third party payers in connection with that conduct.

163.     As a result of Defendant Covidien's violations of Haw. Rev. Stat. § 661-21(a), the State of Hawaii has been damaged in an amount far in excess of millions of dollars exclusive of interest.

164.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action on behalf of herself and the State of Hawaii.

165.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.     That by reason of the aforementioned violations of the Hawaii's false claim provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that Hawaii has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of HAW. REV. STAT. §661-21(a)(3);

b.     That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant HAW. REV. STAT. §661-27(a) and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT X

### Violation of the Montana False Claims Act
### MONT. CODE ANN. § 17-8-401 – 17-8-412

166.    Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

167. This is a qui tam action brought by the Relator on behalf of the State of Montana

to recover treble damages and civil penalties under the Montana False Claims Act, MCA § 17-8-

401, et seq.

168. Montana's False Claims Act, MCA § 17-8-403, provides for liability for any

person who:

(a) knowingly presents or causes to be presented to an officer or employee of the governmental entity a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the governmental entity;

(c) conspires to defraud the governmental entity by getting a false or fraudulent claim allowed or paid by the governmental entity;

(d) has possession, custody, or control of public property or money used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, delivers or causes to be delivered less property or money than the amount for which the person receives a certificate or receipt;

(e) is authorized to make or deliver a document certifying receipt of property used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, makes or delivers a receipt without knowing that the information on the receipt is true;

(f) knowingly buys or receives as a pledge of an obligation or debt public property of the governmental entity from any person who may not lawfully sell or pledge the property;

(g) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors; or

(h) as a beneficiary of an inadvertent submission of a false or fraudulent claim to the governmental entity, subsequently discovers the falsity of the claim or that the claim is fraudulent and fails to disclose the false or fraudulent claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim.

169. In addition, MCA § 45-6-313 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

Defendant violated the Montana False Claims Act by engaging in the conduct alleged herein.

170.    Defendant furthermore violated the Montana False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and MCA § 45-6-313, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

171.    The State of Montana, by and through the Montana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

172.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendant's conduct.  Compliance with applicable Montana statutes and regulations was also an express condition of payment of claims submitted to the State of Montana.

173.    Had the State of Montana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

174.    As a result of Defendant's violations of the Montana False Claims Act, the State interest.

175.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Montana False Claims Act on behalf of himself and the State of Montana.

176.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

a.      That by reason of the aforementioned violations of the Montana False Claims Act that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the Montana has sustained because of Covidien's actions, plus a civil penalty of not more than $10,000 for each violation of the MONT. CODE ANN. § 17-8-403;

b.      That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant the MONT. CODE ANN. § 17-8-410 and/or any other applicable provision of law;

c.      That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XI

**Violation of the Indiana State False Claims and Whistleblowers Protection Act, IND. CODE ANN. § 5-11-5.5-1 – 5-11-5.5-18**

177.   Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

178.   This is a qui tam action brought by Relator on behalf of the State of Indiana to

recover treble damages and civil penalties under the Indiana False Claims and Whistleblower

Protection Act, Indiana Code 5-11-5.5 et seq., which imposes liability on:

(b)   A person who knowingly or intentionally:

(1)   presents a false claim to the state for payment or approval;
(2)   makes or uses a false record or statement to obtain payment or approval of a false claim from the state;
(3)   with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;
(4)   with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;
(5)   receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;
(6)   makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;
(7)   conspires with another person to perform an act described in subdivisions (1) through (6); or
(8)   causes or induces another person to perform an act described in subdivisions (1) through (6) ....

179.   In addition, Indiana Code § 5-11-5.5 et seq. prohibits the solicitation or receipt of

any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly

or covertly, in cash or in kind in return for furnishing any item or service for which payment may

be made in whole or in part under the Indiana Medicaid program.

180.   Defendant Covidien violated Indiana's False Claims Act by engaging in the

conduct alleged herein.

181.    Defendant Covidien further violated Indiana's False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systemic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

182.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by health care providers and third party payers in connection therewith.

183.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant's conduct. Compliance with applicable Indiana statutes and regulations and was also an express condition of payment of claims submitted to the State of Indiana.

184.    Had the State of Indiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by health care providers and third party payers in connection with that conduct.

185.    As a result of Defendant's violations of Indiana's False Claims Act, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

186.    Relator is a private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to Indiana Code § 5-11-5.5 et
seq. on behalf of himself and the State of Indiana.

187.    This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated on the exact same facts as the federal claim and merely asserts separate
damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.      That by reason of the aforementioned violations of the Indiana State False
Claims and Whistleblowers Protection Act that this Court enter judgment in Plaintiff's
favor and against Covidien in an amount equal to not less than two times and not more
than three times the amount of damages that the Indiana has sustained because of
Covidien's actions, plus a civil penalty of less than $5,000 for each violation of the IND.
CODE ANN. § 5-11-5.5-2;

b.      That Relator, as Qui Tam Plaintiff, be awarded the maximum amount
allowed pursuant the IND. CODE ANN. § 5-11-5.5-6 and/or any other applicable
provision of law;

c.      That Relator be awarded all costs and expenses of this action, including
attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court
deems just and proper.

## COUNT XII

### Violation of the Medicaid False Claims Act
### MICH. COMP LAWS § 400.601-400.613

188.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

189.    This is a qui tam action brought by Relator on behalf of the State of Michigan to recover treble damages and civil penalties under Michigan's Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.603 et seq. , which provides in pertinent part as follows:

> Sec. 3.(1) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for medicaid benefits;
> (2) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit....

190.    In addition, Mich. Comp. Laws Ann. § 400.604 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Michigan Medicaid program.

191.    Defendant Covidien violated the Medicaid False Claims Act by engaging in the conduct alleged herein.

192.    Defendant Covidien further violated Michigan law and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan by its deliberate and systematic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

193.    The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

194.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendant's conduct. Compliance with applicable Michigan statutes and regulations was also an express condition of payment of claims submitted to the State of Michigan.

195.    Had the State of Michigan known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

196.    As a result of Defendant Covidien's violations of the Medicaid False Claims Act, the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

197.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Medicaid False Claims Act on behalf of himself and the State of Michigan.

198.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against defendant XXXX as follows:

a.      That by reason of the aforementioned violations of the Michigan State Medicaid False Claims Act that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to three times the amount of damages that the Michigan has sustained because of Covidien's actions, plus a civil penalty of equal to the full amount XXXX unjustly received as a result of its unlawful conduct for violating MICH. COMP LAWS § 400.603, 606 and 607;

b.      That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant the MICH. COMP LAWS § 400.610 and/or any other applicable provision of law;

c.      That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XIII

### New Hampshire False Claims Act
### N.H. REV. STAT. ANN. § 167:58-167:61-b

199.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

200.  This is a qui tam action brought by Relator on behalf of the State of New

Hampshire to recover treble damages and civil penalties under the New Hampshire Health Care

False Claims Law, N.H. Rev. Stat. Ann. § 167:61-b, which provides that:

  I.  Any person shall be liable who...

    (a)  knowingly presents, or causes to be presented, to an officer or

        employee of the State, a false or fraudulent claim for payment or

        approval;

    (b)  knowingly makes, uses, or causes to be made or used, a false

        record or statement to get a false or fraudulent claim paid or

        approved by the State;

    (c)  conspires to defraud the state by getting a false or fraudulent claim

        allowed or paid.

201.  In addition, New Hampshire prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the New Hampshire Medicaid program.

202.  Defendant Covidien violated New Hampshire law by engaging in the conduct

alleged herein.

203.  Defendant Covidien furthermore violated N.H. Rev. Stat. Ann. §167:61-b, and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of New Hampshire by its deliberate and systematic violation of federal and state laws,

including the FDCA, federal Anti-Kickback Act, and the New Hampshire Vendor Fraud and

Kickback statute, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

204. The State of New Hampshire, by and through the New Hampshire Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

205. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Hampshire in connection with Defendant's conduct. Compliance with applicable New Hampshire statutes and regulations was also an express condition of payment of claims submitted to the State of New Hampshire.

206. Had the State of New Hampshire known that Defendant Covidien was violating the federal and/or state laws cited herein and/or the claims submitted in connection with Defendant's misconduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

207. As a result of Defendant's violations of N.H. Rev. Stat. Ann. §167:61-b, the State of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of interest.

208.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.H. Rev. Stat. Ann. §167:61-b on behalf of herself and the State of New Hampshire.

209.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against defendant XXXX as follows:

a.    That by reason of the aforementioned violations of the New Hampshire false claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that New Hampshire has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of the N.H. REV. STAT. ANN. §167:61-b;

b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant N.H. REV. STAT. ANN. §167:61-b and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XIV

## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

## Louisiana Rev. Stat. §437 et seq.

210.   Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

211.   This is a qui tam action brought by Relator on behalf of the State of Louisiana to

recover treble damages and civil penalties under the Louisiana Medical Assistance Programs

Integrity Law, La. Rev. Stat. Ann. § 437.1 et seq.

212.   La. Rev. Stat. Ann. § 438.3 provides-

   a.   No person shall knowingly present or cause to be presented a false or fraudulent
        claim;
   b.   No person shall knowingly engage in misrepresentation to obtain, or attempt to
        obtain, payment from medical assistance program funds;
   c.   No person shall conspire to defraud, or attempt to defraud, the medical assistance
        programs through misrepresentation or by obtaining, or attempting to obtain,
        payment for a false or fraudulent claim.

213.   In addition, La. Rev. Stat. Ann. § 438.2(A) prohibits the solicitation, receipt,

offering or payment of any financial inducements, including kickbacks, bribes and/or rebates,

directly or indirectly, overtly or covertly, in cash or in kind, for furnishing healthcare goods or

services paid for in whole or in part by the Louisiana medical assistance programs.

214.   Defendant Covidien violated La. Rev. Stat. Ann. § 438.2(A) by engaging in the

conduct alleged herein.

215.   Defendant Covidien further violated La. Rev. Stat. Ann. §438.3 and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of

Louisiana by its deliberate and systematic violation of federal and state laws, including the

FDCA, federal Anti-Kickback Act, and La. Rev. Stat. Ann. § 438.2(A) and by virtue of the fact

that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

216.    The State of Louisiana, by and through the Louisiana Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

217.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendant's conduct.  Compliance with applicable Louisiana statutes and regulations was also an express condition of payment of claims submitted to the State of Louisiana.

218.    Had the State of Louisiana known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

219.    As a result of Defendant Covidien's violations of La. Rev. Stat. Ann. § 438.3, the State of Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

220.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. §439.l(A) on behalf of himself and the State of Louisiana.

221.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.    That by reason of the aforementioned violations of the Louisiana Medical Integrity Programs Integrity Law that this Court enter judgment in Plaintiff's favor and against Covidien in an amount three times the amount of damages that Louisiana has sustained because of Covidien's actions for violation of the Louisiana Medical Assistance Programs Integrity Law, Louisiana Rev. Stat. §437 et seq.;

b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant Louisiana Medical Assistance Programs Integrity Law, Louisiana Rev. Stat. §437 et seq. and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

222.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

## COUNT XV

**Massachusetts False Claims Act**
**Massachusetts Gen. Laws c.12 §5(A)**

223.   This is a qui tam action brought by Relator on behalf of the Commonwealth of

Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass.

Gen. Laws Ann. Chap. 12 § 5(A) et seq.

224.   Mass. Gen. Laws Ann. Chap. 12 § 5B provides liability for any person who-

(1)   knowingly presents, or causes to be presented, a false or fraudulent
      claim for payment or approval;
(2)   knowingly makes, uses, or causes to be made or used, a false
      record or statement to obtain payment or approval of a claim by the
      commonwealth or
(3)   conspires to defraud the commonwealth or any political
      subdivision thereof through the allowance or payment of a
      fraudulent claim;
      ***
(9)   is a beneficiary of an inadvertent submission of a false claim to the
      commonwealth or political subdivision thereof, subsequently
      discovers the falsity of the claim, and fails to disclose the false
      claim to the commonwealth or political subdivision within a
      reasonable time after discovery of the false claim.

225.   In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation,

receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly,

overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which

payment may be made in whole or in part under the Massachusetts Medicaid program.

226.   Defendant Covidien violated Mass. Gen. Laws Ann. Chap. 118E § 41 by

engaging in the conduct alleged herein.

227.   Defendant Covidien further violated Mass. Gen. Laws Ann. Chap. 12 § 5B and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

Commonwealth of Massachusetts by its deliberate and systematic violation of federal and state

laws, including the FDCA, federal Anti-Kickback Act, Mass. Gen. Law Ann. Chap. 118E § 41

and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

228. The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

229. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendant Covidien's misconduct. Compliance with applicable Massachusetts statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Massachusetts.

230. Had the Commonwealth of Massachusetts known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

231. As a result of Defendant Covidien's violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

232.    Relator is a private citizen with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5(c)(2) on behalf of herself and the Commonwealth of Massachusetts.

233.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

## COUNT XVI

### New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1- 27-14-15

234.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

235.    This is a qui tam action brought by Plaintiff-Relator on behalf of the State of New Mexico to recover treble damages and civil penalties under the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 27-14-1 et seq. , which provides in pertinent part as follows:

A person shall not:

(1)    knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee, or other recipient of state funds, a false or fraudulent claim for payment or approval;

(2)    knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

(3)    conspire to defraud the state by obtaining approval or payment on a false or fraudulent claim ....

236.    In addition, N.M. Stat. Ann. §§ 30-44-7 et seq. prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any item or service for which payment may
be made in whole or in part under the New Mexico Medicaid program.

237.    Defendant Covidien violated N.M. Stat. Ann. §§ 30-44-7 et seq. by engaging in
the conduct alleged herein.

238.    Defendant Covidien further violated N.M. Stat. Ann. §§ 27-14-1 et seq. and
knowingly caused hundreds of thousands of false claims to be made, used and presented to the
State of New Mexico by its deliberate and systematic violation of federal and state laws,
including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the
claims submitted in connection with its conduct were even eligible for reimbursement by the
government-funded healthcare programs.

239.    The State of New Mexico, by and through the New Mexico Medicaid program
and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the
claims submitted by healthcare providers and third party payers in connection therewith.

240.    Compliance with applicable Medicare, Medicaid and the various other federal and
state laws cited herein was an implied, and upon information and belief, also an express
condition of payment of claims submitted to the State of New Mexico in connection with
Defendant's conduct.  Compliance with applicable New Mexico statutes, regulations and
Pharmacy Manuals was also an express condition of payment of claims submitted to the State of
New Mexico.

241.    Had the State of New Mexico known that Defendant Covidien was violating the
federal and state laws cited herein and/or that the claims submitted in connection with
Defendant's conduct failed to meet the reimbursement criteria of the government-funded

healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

242. As a result of Defendant's violations of N.M. Stat. Ann. §§ 27-14-1 et seq. the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

243. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. §§ 27-14-1 et seq. on behalf of himself and the State of New Mexico.

244. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a. That by reason of the aforementioned violations of the New Mexico False Claims Act provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount three times the amount of damages that New Mexico has sustained because of Covidien's actions for violation of the N.M. STAT. ANN. § 27-14-4;

b. That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant N.M. STAT. ANN. § 27-14-9 and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XVII

### Nevada False Claims Act

### NEV. REV. STAT. ANN. §357.01-.250

245.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

246.    This is a qui tam action brought by Relator on behalf of the State of Nevada to

recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S.§ 357.010,

et. seq.

247.    N.R.S. § 357.040(1) provides liability for any person who -

(a) knowingly presents or causes to be presented a false claim for payment or
    approval;
(b) knowingly makes or uses, or causes to be made or used, a false record or
    statement to obtain payment or approval of a false claim;
(c) conspires to defraud by obtaining allowance or payment of a false claim;
(h) is a beneficiary of an inadvertent submission of a false claim and, after
    discovering the falsity of the claim, fails to disclose the falsity to the state or
    political subdivision within a reasonable time.

248.    In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of

anything of value in connection with the provision of medical goods or services for which

payment may be made in whole or in part under the Nevada Medicaid program.

249.    Defendant Covidien violated N.R.S. § 422.560 by engaging in the conduct alleged

herein.

250. Defendant Covidien further violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti- Kickback Act and N.R.S. § 422.560, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded health care programs.

251. The State of Nevada, by and through the Nevada Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

252. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendant Covidien's conduct. Compliance with applicable Nevada statutes and regulations was also an express condition of payment of claims submitted to the State of Nevada.

253. Had the State of Nevada known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant Covidien's conduct failed to meet the reimbursement criteria of the government funded health care programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

254. As a result of Defendant's violations of N.R.S. § 357.040(1), the State of Nevada has been damaged in an amount far in excess of millions of dollars exclusive of interest.

255.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080(1) on behalf of himself and the State of Nevada.

256.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

          WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

          a.     That by reason of the aforementioned violations of the Nevada false claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that Nevada has sustained because of Covidien's actions, plus a civil penalty of not more than $10,000 for each violation of the NEV. REV. STAT. ANN. §357.014(1)(c);

          b.     That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant Nev. Rev. Stat. Ann. §357,210(1) and/or any other applicable provision of law;

          c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

          d.     That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XVIII

## Tennessee Medicaid False Claims Act

### Tenn. Code. Ann. §71-5-181 to -185

257.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

258.    This is a qui tam action brought by Relator on behalf of the State of Tennessee to

recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act,

Tenn. Code Ann. § 71-5-181 et seq.

259.    Section 71-5-182(a)(1) provides liability for any person who-

- (A) presents, or causes to be presented to the state, a claim for payment under the
  Medicaid program knowing such claim is false or fraudulent;
- (B) makes or uses, or causes to be made or used, a record or statement to get a
  false or fraudulent claim under the Medicaid program paid for or approved by
  the state knowing such record or statement is false;
- (C) conspires to defraud the State by getting a claim allowed or paid under the
  Medicaid program knowing that such claim is false or fraudulent.

260.    Defendant Covidien violated Tenn. Code Ann. § 71-5-1 82(a)(1) and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of

Tennessee by its deliberate and systematic violation of federal and state laws, including the

FDCA and Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in

connection with its conduct were even eligible for reimbursement by the government-funded

healthcare programs.

261.    The State of Tennessee, by and through the Tennessee Medicaid program and

other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims

submitted by healthcare providers and third party payers in connection therewith.

262.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Defendant's conduct.   Compliance with applicable Tennessee statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Tennessee.

263.     Had the State of Tennessee known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

264.     As a result of Defendant Covidien's violations of Tenn. Code Ann. § 71-5-182(a)(l), the State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive of interest.

265.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(l) on behalf of herself and the State of Tennessee.

266.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.     That by reason of the aforementioned violations of the Tennessee false claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that Tennessee has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of the TENN. CODE ANN. §71-5-182(a)(1)(C);

b.     That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant Tenn. Code. Ann. §71-5-183(c)(1) and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XIX

### Texas Medicaid Fraud Prevention Act

### TEX. HUM. RES. CODE ANN 36.001-.132

267.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

268.    This is a qui tam action brought by Plaintiff-Relater on behalf of the State of Texas to recover double damages and civil penalties under V.T.C.A. Hum. Res. Code § 36.001 et seq.

269.    V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who-

    (1)    knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:

        (a)    on an application for a contract, benefit, or payment under the Medicaid program; or

        (b)    that is intended to be used to determine its eligibility for a benefit or payment under the Medicaid program.

    (2)    knowingly or intentionally concealing or failing to disclose an event:

        (a)    that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of:

            (i)    the person, or

            (ii)    another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and

        (b)    to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

    (4)    knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

\* \* \*

        (b) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

    (5)    knowingly or intentionally charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or continued service to a Medicaid recipient if the cost of the service provided to the Medicaid recipient is paid for, in whole or in part, under the Medicaid program.

    177.    Defendant Covidien violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of

Texas by its deliberate and systematic violation of federal and state laws, including the FDCA,

federal Anti- kickback Act and § 36.002, and by virtue of the fact that none of the claims

submitted in connection with its conduct were even eligible for reimbursement by the

government-funded healthcare programs.

178.    The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

179.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of Texas in connection with Defendant's conduct.  Compliance with applicable Texas statutes and regulations and was an express condition of payment of claims submitted to the State of Texas.

180.    Had the State of Texas known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant Covidien's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

181.    As a result of Defendant Covidien's violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

182.    Defendant Covidien did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and has not otherwise furnished information to the State regarding the claims for reimbursement at issue.

183. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of herself and the State of Texas.

184. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.  That by reason of the aforementioned violations of the Texas Medicaid Fraud Prevention Statute that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to two times the amount of damages that the state of Texas has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $15,000 for each violation of TEX. HUM. RES. CODE ANN. § 36.002(8) that results in injury to an elderly person, a disabled person, or a person younger than 18 years of age, or not less than $1,000 and not more than $10,000 for each violation of the TEX. HUM. RES. CODE ANN. § 36.002(8) that does not result in an injury to a person;

b.  That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant TEX. HUM. RES. CODE ANN. § 36.110 and/or any other applicable provision of law;

c.  That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XX

### Virginia Fraud Against Taxpayer's Act
### VA Code ann. 8.01-2.16. 1-216.19

185.     Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

186.     This is a qui tam action brought by Relator on behalf of the Commonwealth of

Virginia for treble damages and penalties under Virginia Fraud Against Tax Payers Act, §8.01 -

216.3a, which provides liability for any person who-

(1)     knowingly presents, or causes to be presented, a false or fraudulent claim for
        payment or approval;
(2)     knowingly makes, uses, or causes to be made or used, a false record or statement
        to obtain payment or approval of a claim by the commonwealth or
(3)     conspires to defraud the commonwealth or any political subdivision thereof
        through the allowance or payment of a fraudulent claim;
* * *
(9)     is a beneficiary of an inadvertent submission of a false claim to the
        commonwealth or political subdivision thereof, subsequently discovers the falsity
        of the claim, and fails to disclose the false claim to the commonwealth or political
        subdivision within a reasonable time after discovery of the false claim.

185.     In addition, VA Code Ann. § 32.1-315 prohibits the solicitation, receipt or

offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any good, service or item for which payment

may be made in whole or in part under the Virginia Medicaid program.

186.     Defendant Covidien violated VA Code Ann. § 32.1-315 by engaging in the

conduct alleged herein.

187.    Defendant Covidien furthermore violated Virginia's Fraud Against Tax Payers Act, § 8.01- 216.3a, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Virginia by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, VA Code Ann. § 32.1-315 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

188.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state health care programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

189.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendant's conduct. Compliance with applicable Virginia statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Virginia.

190.    Had the Commonwealth of Virginia known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

191.     As a result of Defendant's violations of Virginia's Fraud Against Tax Payers Act, §8.01 -216.3a, the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

192.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Virginia's Fraud Against Tax Payers Act, §8.01-216.3, on behalf of himself and the Commonwealth of Virginia.

193.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.     That by reason of the aforementioned violations of the Virginia Fraud Against Taxpayers Act that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the Commonwealth of Virginia has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of the VA. CODE ANN. § 8.01-216.3(A)(3);

b.     That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant VA. CODE ANN. § 8.01-216.7 and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XXI

### Georgia State False Medicaid Claims Act
### Ga. Code 49-4-168 *et seq.*

194.     Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

195.     This is a qui tam action brought by Relator on behalf of the State of Georgia to

recover treble damages and civil penalties under the Georgia False Medicaid Claims Act, Ga.

Code Ann., § 49-4-168 et seq.

196.     The Georgia False Medicaid Claims Act imposes liability on any person who:

(1) Knowingly presents or causes to be presented to the Georgia Medicaid program a
    false or fraudulent claim for payment or approval;
(2) Knowingly makes, uses, or causes to be made or used a false record or statement to
    get a false or fraudulent claim paid or approved by the Georgia Medicaid program;
(3) Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent
    claim allowed or paid;
(4) Has possession, custody, or control of property or money used or to be used by the
    Georgia Medicaid program and, intending to defraud the Georgia Medicaid program
    or willfully to conceal the property, delivers, or causes to be delivered, less property
    than the amount for which the person receives a certificate of receipt;
(5) Being authorized to make or deliver a document certifying receipt of property used,
    or to be used, by the Georgia Medicaid program and, intending to defraud the Georgia
    Medicaid program, makes or delivers the receipt without completely knowing that the
    information on the receipt is true;
(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property
    from an officer or employee of the Georgia Medicaid program who lawfully may not
    sell or pledge the property; or
(7) Knowingly makes, uses, or causes to be made or used a false record or statement to
    conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property
    to the State of Georgia ....

197.    Defendant Covidien violated the Georgia False Medicaid Claims Act, Ga. Code Ann., § 49- 4-168, et seq. by engaging in the conduct alleged herein.

198.    Defendant Covidien further violated the Georgia False Medicaid Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, including the FDCA and the federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

199.    The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

200.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendant Covidien's conduct.  Compliance with applicable Georgia statutes and regulations was also an express condition of payment of claims submitted to the State of Georgia.

201.    Had the State of Georgia known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

202.     As a result of Defendant Covidien's violations of the Georgia False Medicaid Claims Act, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

203.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Georgia False Medicaid Claims Act on behalf of herself and the State of Georgia.

204.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.     That by reason of the aforementioned violations of the Georgia False Medicaid Claims Act that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the Georgia has sustained because of Covidien's actions, plus a civil penalty of not more than $10,000 for each violation of the GA. CODE ANN. § 49-4-168.1;

b.     That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant the GA. CODE ANN. § 49-4-168.2 (I) and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

        d.      That Plaintiff and Relator have such other and further relief

that this Court deems just and proper.

## COUNT XXII

### New York False Claims Act
### N.Y. St. Finance Law §187 *et seq.*

205.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

206.    This is a qui tam action brought by Relator on behalf of the State of New York to

recover treble damages and civil penalties under the New York State False Claims Act, State

Finance Law § 189, which imposes liability on any person who:

> (a) knowingly presents, or causes to be presented, to any employee, officer or agent
> of the state or local government, a false or fraudulent claim for payment or
> approval;
> (b) knowingly makes, uses, or causes to be made or used, a false record or statement
> to get a false or fraudulent claim paid or approved by the state or local
> government; or
> (c) conspires to defraud the State by getting a false or fraudulent claim allowed or
> paid.

207.    In addition, New York law prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the New York Medicaid program.

208.    Defendant Covidien violated New York law by engaging in the conduct alleged

herein.

209.    Defendant Covidien further violated the New York State False Claims Act, and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of New York, by its deliberate and systematic violation of federal and state laws, including the FDCA and the federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

210. The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

211. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendant Covidien's conduct. Compliance with applicable New York statutes and regulations was also an express condition of payment of claims submitted to the State of New York.

212. Had the State of New York known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by health care providers and third party payers in connection with that conduct.

213. As a result of Defendant Covidien's violations of the New York State False Claims Act, the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

214.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New York State False Claims Act, on behalf of herself and the State of New York.

215.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.    That by reason of the aforementioned violations of the New York False Claims Act provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that New York has sustained because of Covidien's actions, plus a civil penalty of not less than $6,000 and not more than $12,000 for each violation of N.Y. STATE FIN. LAW § 189;

b.    That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant N.Y. STATE FIN. LAW § 119(6) and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXIII

**City of Chicago False Claims Act**
**Municipal Code of Chicago §1-22-010-§1-22-060**

216.    Relator incorporates by reference and re-alleges all above paragraphs as if fully

set forth herein.

217.    This is a qui tam action brought by Plaintiff-Relater and the City of Chicago to

recover treble damages and civil penalties under the Chicago False Claims Act, Chapter 1-22-10

et seq.

218.    Chicago False Claims Act, Chapter 1-22-20, provides for liability for any person

who:

1)  knowingly presents, or causes to be presented, to an official or employee of the
    city a false or fraudulent claim for payment or approval;
2)  knowingly makes, uses, or causes to be made or used, a false record or statement
    to get a false or fraudulent claim paid or approved by the city;
3)  conspires to defraud the city by getting a false or fraudulent claim allowed or
    paid;
4)  has possession, custody, or control of property or money used, or to be used, by
    the city and, intending to defraud the city or to conceal the property, delivers, or
    causes to be delivered, less property than the amount for which the person
    receives a certificate or receipt;
5)  authorized to make or deliver a document certifying receipt of property used, or
    to be used, by the city and, intending to defraud the city, makes or delivers the
    receipt without complete knowledge that the information on the receipt is true;
6)  knowingly buys, or receives as a pledge of an obligation or debt, public property
    from an officer or employee of the city who lawfully may not sell or pledge the
    property; or
7)  knowingly makes, uses, or causes to be made or used, a false record or statement
    to conceal, avoid or decrease an obligation to pay or transmit money or property
    to the city.

219.    Defendant Covidien violated Chicago False Claims Act, and further knowingly

caused thousands of false claims to be made, used and presented to the City of Chicago by its

deliberate and systematic violation of federal and state laws, including the FDCA and federal

Anti- Kickback Act, and by virtue of the fact that none of the claims submitted in connection

with its illegal conduct were even eligible for reimbursement by the government-funded healthcare programs.

220.    The City of Chicago, by and through the City of Chicago Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

221.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the City of Chicago in connection with Defendant Covidien's illegal conduct.  Compliance with applicable the City of Chicago statutes and regulations was also an express condition of payment of claims submitted to the State of New York.

222.    Had the City of Chicago known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant Covidien's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

223.    As a result of Defendant Covidien's violations of Chicago False Claims Act has been damaged in an amount far in excess of millions of dollars exclusive of interest.

224.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Chicago False Claims Act on behalf of herself and the City of Chicago.

225.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the City of Chicago in the operation of its Medicaid program.

226.    By reason of the Defendant's unlawful acts, the City of Chicago has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.    Three times the amount of actual damages which the City of Chicago has sustained as a result of Defendant's illegal conduct;

b.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the City of Chicago;

c.    Prejudgment interest;

d.    All costs incurred in bringing this action; and

e.    Any such other and further relief that this Court deems just and proper.

## COUNT XXIV

### New Jersey False Claims Act
### N.J. STAT. §2A:32C-1-17

227.    Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

228.    This is a qui tam action brought by Relator on behalf of the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J.S.A. § 2A:32C-l, et seq.

229. New Jersey False Claims Act, N.J.S.A. § 2A:32C-3, provides for liability for any

person who:

   a. Knowingly presents or causes to be presented to an employee, officer or agent of
      the State, or to any contractor, grantee, or other recipient of State funds, a false or
      fraudulent claim for payment or approval;
   b. Knowingly makes, uses, or causes to be made or used a false record or statement
      to get a false or fraudulent claim paid or approved by the State;
   c. Conspires to defraud the State by getting a false or fraudulent claim allowed or
      paid by the State;
   d. Has possession, custody, or control of public property or money used or to be
      used by the State and knowingly delivers or causes to be delivered less property
      than the amount for which the person receives a certificate or receipt;
   e. Is authorized to make or deliver a document certifying receipt of property used or
      to be used by the State and, intending to defraud the entity, makes or delivers a
      receipt without completely knowing that the information on the receipt is true;
   f. Knowingly buys, or receives as a pledge of an obligation or debt, public property
      from any person who lawfully may not sell or pledge the property; or
   g. Knowingly makes, uses, or causes to be made or used a false record or statement
      to conceal, avoid, or decrease an obligation to pay or transmit money or property
      to the State.

230. In addition, N.J.S.A. § 30:4D-17 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the New Jersey Medicaid program.

231. Defendant Covidien violated the New Jersey False Claims Act by engaging in the

conduct alleged herein.

232. Defendant Covidien further violated the New Jersey False Claims Act and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of New Jersey by its deliberate and systematic violation of federal and state laws, including

the FDCA, federal Anti-Kickback Act and N.J.S.A. § 30:4D-17, and by virtue of the fact that

none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

233.    The State of New Jersey, by and through the New Jersey Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

234.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendant Covidien's conduct. Compliance with applicable New Jersey statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Jersey.

235.    Had the State of New Jersey known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

236.    As a result of Defendant Covidien's violations of the New Jersey False Claims Act, the State of New Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

237. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Jersey False Claims Act on behalf of herself and the State of New Jersey.

238. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a. That by reason of the aforementioned violations of the New Jersey False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of New Jersey has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of N.J. STAT. §2A:32C-1-17;

b. That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant N.J. STAT. §2A:32C-1-17 and/or any other applicable provision of law;

c. That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d. That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXV

**Violation of Rhode Island's State False Claims Act**
**R.I. Gen. Laws 1956 § 9-1.1-1 – 9-1.1-8**

239.   Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

240.   This is a qui tam action brought by Relator on behalf of the State of Rhode Island

to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen.

Laws 1956 § 9-1.1-1 – 9-1.1-8

241.   Rhode Island's False Claims Act, Gen. Laws 1956, § 9-1.1-3, provides for liability

for any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;
> (3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid;
> (4) has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;
> (5) authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;
> (6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the guard, who lawfully may not sell or pledge the property; or
> (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

242.   In addition, Gen. Laws 1956, § 40-8.2-9 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Rhode Island Medicaid program.

243. Defendant violated the Rhode Island False Claims Act by engaging in the conduct alleged herein.

244. Defendant further violated the Rhode Island False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Rhode Island by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Gen. Laws 1956, § 40-8.2-9, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

245. The State of Rhode Island, by and through the Rhode Island Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

246. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendant's conduct. Compliance with applicable Rhode Island statutes and regulations was also an express condition of payment of claims submitted to the State of Rhode Island.

247. Had the State of Rhode Island known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

248.     As a result of Defendant's violations of the Rhode Island False Claims Act, the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

249.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Rhode Island False Claims Act on behalf of herself and the State of Rhode Island.

250.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.       That by reason of the aforementioned violations of Rhode Island's False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of Rhode Island has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of R.I. Gen. Laws § 9-1.1-3;

b.       That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant R.I. Gen. Laws § 9-1.1-4(d) and/or any other applicable provision of law;

c.       That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XXVI

### Violation of Oklahoma's False Claims Act
### 63  Okl. St. §5053-5053.7

251.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

252.    This is a qui tam action brought by Relator on behalf of the State of Oklahoma to

recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63

Okl. St. Ann. § 5053, et seq.

253.    Oklahoma's Medicaid False Claims Act, 63 Okl. St. Ann. § 5053.1, provides for

liability for any person who:

1.   Knowingly presents, or causes to be presented, to an officer or employee of
     the State of Oklahoma, a false or fraudulent claim for payment or approval;
2.   Knowingly makes, uses, or causes to be made or used, a false record or
     statement to get a false or fraudulent claim paid or approved by the state;
3.   Conspires to defraud the State by getting a false or fraudulent claim allowed
     or paid;
4.   Has possession, custody, or control of property or money used, or to be used,
     by the state and, intending to defraud the State or willfully to conceal the
     property, delivers, or causes to be delivered, less property than the amount for
     which the person receives a certificate or receipt;
5.   Is authorized to make or deliver a document certifying receipt of property
     used, or to be used, by the State and, intending to defraud the State, makes or
     delivers the receipt without completely knowing that the information on the
     receipt is true;
6.   Knowingly buys, or receives as a pledge of an obligation or debt, public
     property from an officer or employee of the state, who lawfully may not sell
     or pledge the property; or
7.   Knowingly makes, uses, or causes to be made or used, a false record or
     statement to conceal, avoid, or decrease an obligation to pay or transmit
     money or property to the State.

254. In addition, 56 Okl. St. Ann. § 1005 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Oklahoma Medicaid program.

255. Defendant Covidien violated the Oklahoma Medicaid False Claims Act by engaging in the conduct alleged herein.

256. Defendant furthermore violated the Oklahoma Medicaid False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Oklahoma by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and 56 Old. St. Ann. § 1005, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

257. The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

258. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendant's conduct. Compliance with applicable Oklahoma statutes and regulations was also an express condition of payment of claims submitted to the State of Oklahoma.

259. Had the State of Oklahoma known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct

failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

260.    As a result of Defendant Covidien's violations of the Oklahoma Medicaid False Claims Act, the State of Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

261.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to the Oklahoma Medicaid

262.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.    That by reason of the aforementioned violations of Oklahoma's False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of Oklahoma has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of 63 Okl. St. §5053.1.4;

b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant 63 Okl. St. §5053.1.4 and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XXVII

### Violation of Wisconsin's False Claims Act
### Wis. Stat. § 20.931

263.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

264.    This is a qui tam action brought by Plaintiff-Relator on behalf of the State of

Wisconsin to recover treble damages and civil penalties under the Wisconsin False Claims Act,

W.S.A. § 20.931, et seq.

265.    The Wisconsin False Claims Act, W .S.A. § 20.931, et seq. provides for liability

for any person who:

> (a)    Knowingly presents or causes to be presented to any officer, employee, or
> agent of this state a false claim for medical assistance.
> (b)    Knowingly makes, uses, or causes to be made or used a false record or
> statement to obtain approval or payment of a false claim for medical assistance.
> (c)    Conspires to defraud this state by obtaining allowance or payment of a
> false claim for medical assistance, or by knowingly making or using, or causing to
> be made or used, a false record or statement to conceal, avoid, or decrease an
> obligation to pay or transmit money or property to the Medical Assistance
> program.

* * *

> (g)    Knowingly makes, uses, or causes to be made or used a false record or
> statement to conceal, avoid, or decrease any obligation to pay or transmit money
> or property to the Medical Assistance program.
> (h)    Is a beneficiary of the submission of a false claim for medical assistance to
> any officer, employee, or agent of this state, knows that the claim is false, and

fails to disclose the false claim to this state within a reasonable time after the person becomes aware that the claim is false.

266. In addition, W.S.A. § 49.49 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Wisconsin Medicaid program.

267. Defendant Covidien violated the Wisconsin False Claims Act by engaging in the conduct alleged herein.

268. Defendant Covidien further violated the Wisconsin False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Wisconsin by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and W.S.A. § 49.49, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

269. The State of Wisconsin, by and through the Wisconsin Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

270. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Wisconsin in connection with Defendant's conduct. Compliance with applicable Wisconsin statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Wisconsin.

271. Had the State of Wisconsin known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

272. As a result of Defendant Covidien's violations of the Wisconsin False Claims Act, the State of Wisconsin has been damaged in an amount far in excess of millions of dollars exclusive of interest.

273. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Wisconsin False Claims Act on behalf of herself and the State of Wisconsin.

274. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a. That by reason of the aforementioned violations of Wisconsin's False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of Wisconsin has sustained because of Defendant Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of Wis. Stat. § 20.931;

b.     That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed

pursuant Wis. Stat. § 20.931 and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's

fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court deems

just and proper.

## COUNT XXVIII

### North Carolina False Claims Act
### N.C. Gen. Stat. § 1-605 – 618, §108A-63

275.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

276.    This is a qui tam action brought by Relator on behalf of the State of North

Carolina to recover treble damages and civil penalties under the North Carolina False Claims

Act, N.C.G.S.A. § 1-605, et seq.

277.    North Carolina's False Claims Act, N.C.G.S.A. § 1-607, provides for liability for

any person who:

(1)   Knowingly presents or causes to be presented a false or fraudulent claim
      for payment or approval.
(2)   Knowingly makes, uses, or causes to be made or used, a false record or
      statement material to a false or fraudulent claim.
(3)   Conspires to commit a violation of subdivision (1), (2), (4), (5), (6), or
      (7) of this section.
(4)   Has possession, custody, or control of property or money used or to be
      used by the State and knowingly delivers or causes to be delivered less
      than all of that money or property.
(5)   Is authorized to make or deliver a document certifying receipt of property
      used or to be used by the State and, intending to defraud the State, makes

> or delivers the receipt without completely knowing that the information on the receipt is true.
>
> (6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any officer or employee of the State who lawfully may not sell or pledge the property.
>
> (7) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State.

185.    In addition, N.C.G.S.A. § 108A-63 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the North Carolina Medicaid program.

186.    Defendant violated the North Carolina False Claims Act by engaging in the conduct alleged herein.

187.    Defendant violated the North Carolina False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of North Carolina by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and N.C.G.S.A. § 108A-63, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

188.    The State of North Carolina, by and through the North Carolina Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

189.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of North Carolina in connection with
Defendant's conduct. Compliance with applicable North Carolina statutes, regulations and
Pharmacy Manuals was also an express condition of payment of claims submitted to the State of
North Carolina.

190. Had the State of North Carolina known that Defendant was violating the federal
and state laws cited herein and/or that the claims submitted in connection with Defendant's
conduct failed to meet the reimbursement criteria of the government-funded healthcare programs
or were premised on false and/or misleading information, it would not have paid the claims
submitted by healthcare providers and third party payers in connection with that conduct.

191. As a result of Defendant's violations of the North Carolina False Claims Act, the
State of North Carolina has been damaged in an amount far in excess of millions of dollars
exclusive of interest.

192. Relator is private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to the North Carolina False
Claims Act on behalf of herself and the State of North Carolina.

193. This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
separate damage to the State of North Carolina in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a. That by reason of the aforementioned violations of the North Carolina False
Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an
amount equal to not less than two times and not more than three times the amount of damages

that the state of North Carolina has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of N.C. Gen. Stat. § 1-605-618, §108A-63;

    b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant the N.C. Gen. Stat. § 1-605-618, §108A-63 and/or any other applicable provision of law;

    c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

    d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXIX

### Minnesota False Claims Act
### Minn. Stat. § 15.C01 et seq.

194.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

195.    This is a qui tam action brought by Relator on behalf of the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, Minnesota False Claims Act, M.S.A. § 15C.02, provides for liability for any person who:

    1)  knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;

    2)  knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision;

    3)  knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to

be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim;

4) has possession, custody, or control of public property or money used, or to be used, by the state or a political subdivision and knowingly delivers or causes to be delivered to the state or a political subdivision less money or property than the amount for which the person receives a receipt;

5) is authorized to prepare or deliver a receipt for money or property used, or to be used, by the state or a political subdivision and knowingly prepares or delivers a receipt that falsely represents the money or property;

6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state or a political subdivision who lawfully may not sell or pledge the property; or

7) knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a political subdivision.

196.    In addition, M.S.A. § 256B.0914, prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Minnesota Medicaid program.

197.    Defendant Covidien violated the Minnesota False Claims Act by engaging in the

conduct alleged herein.

198.    Defendant Covidien further violated the Minnesota False Claims Act and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of Minnesota by its deliberate and systemic violation of federal and state laws, including

the FDCA, federal Anti-Kickback Act and M.S.A. § 256B.0914, and by virtue of the fact that

none of the claims submitted in connection with its conduct were even eligible for

reimbursement by the government-funded healthcare programs.

199.    The State of Minnesota, by and through the Minnesota Medicaid program and

other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims

submitted by healthcare providers and third party payers in connection therewith.

200. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendant Covidien's conduct. Compliance with applicable Minnesota statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Minnesota.

201. Had the State of Minnesota known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

202. As a result of Defendant Covidien's violations of the Minnesota False Claims Act, the State of Minnesota has been damaged in an amount far in excess of millions of dollars exclusive of interest.

203. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Minnesota False Act on behalf of herself and the State of Minnesota.

204. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Minnesota in the operation of its Medicaid program.

WHEREFORE, Plaintiff demands judgment against Defendant Covidien as follows:

a.     That by reason of the aforementioned violations of the Minnesota False Claims

provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount

equal to not less than two times and not more than three times the amount of damages that the

state of North Carolina has sustained because of Covidien's actions, plus a civil penalty of not

less than $5,500 and not more than $11,000 for each violation of Minn. Stat. § 15.C01 et seq.;

b.     That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed

pursuant Minn. Stat. § 15.C01 et seq. and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's

fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court deems

just and proper.

## COUNT XXX

### Colorado Medicaid False Claims Act
### C.R.S. § 25.5-4-304 et seq.

205.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

206.    This is a qui tam action brought by Relator on behalf of the State of Colorado to

recover treble damages and civil penalties under the Colorado Medicaid False Claims Act,

C.R.S.A. § 25.5-4-304, et seq.

207.    Colorado's Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, et seq. provides

for liability for any person who:

a) Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

c) Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;

d) Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

e) Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who lawfully may not sell or pledge the property;

f) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act"; ...

g) Conspires to commit a violation of paragraphs (a) to (f) of this subsection (1).

208. In addition, C.R.S.A. § 25.5-4-414 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Colorado Medicaid program.

209. Defendant Covidien violated the Colorado Medicaid False Claims Act by

engaging in the conduct alleged herein.

210. Defendant Covidien further violated the Colorado Medicaid False Claims Act and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of Minnesota by its deliberate and systemic violation of federal and state laws, including

the FDCA, federal Anti-Kickback Act and C.R.S.A. § 25.5-4-414, and by virtue of the fact that

none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

211.    The State of Colorado, by and through the Colorado Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

212.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendant Covidien's conduct. Compliance with applicable Colorado statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Colorado.

213.    Had the State of Colorado known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant Covidien's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

214.    As a result of Defendant Covidien's violations of the Colorado Medicaid False Claims Act, the State of Colorado has been damaged in an amount far in excess of millions of dollars exclusive of interest.

215.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Colorado Medicaid False Claims Act on behalf of herself and the State of Colorado.

216.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Colorado in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

a.    That by reason of the aforementioned violations of the Colorado False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of Colorado has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation;

b.    That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to C.R.S. § 25.5-4-304 et seq. and/or any other applicable provision of law;

c.    That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.    That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXXI

**Connecticut Medicaid False Claims Act**
**CHAPTER 319v Sec. 17b-301a et seq.**

217.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

218.    This is a qui tam action brought by Relator on behalf of the State of Connecticut

to recover treble damages and civil penalties under the Connecticut False Claims Act, Conn.

Gen. Stat. § 1 7b-301 a, et seq.

219.    Conn. Gen. Stat. § 1 7b-301 b imposes liability as follows:

(a) No person shall:
1.  Knowingly present, or cause to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;
2.  Knowingly make, use or cause to be made or used, a false record or statement to secure the payment or approval by the state of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;
3.  Conspire to defraud the state by securing the allowance or payment of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;
4.  Having possession, custody or control of property or money used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services, and intending to defraud the state or wilfully to conceal the property, deliver or cause to be delivered less property than the amount for which the person receives a certificate or receipt;
5.  Being authorized to make or deliver a document certifying receipt of property used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services and intending to defraud the state, make or deliver such document without completely knowing that the information on the document is true;
6.  Knowingly buy, or receive as a pledge of an obligation or debt, public property from an officer or employee of the state relative to a medical assistance program administered by the Department of Social Services, who lawfully may not sell or pledge the property; or
7.  Knowingly make, use or cause to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services.

220.    In addition, Conn. Gen. Stat. § 53a-16lc prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Connecticut Medicaid program.

221.    Defendant violated the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a, et seq. by engaging the conduct alleged herein.

222.    Defendant Covidien further violated the Connecticut False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Connecticut by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Conn. Gen. Stat. § 53a-161c, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

223.    The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

224.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendant's conduct. Compliance with applicable Connecticut statutes and regulations was also an express condition of payment of claims submitted to the State of Connecticut.

225.    Had the State of Connecticut known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with

Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

226.    As a result of Defendant Covidien's violations of the Connecticut False Claims Act, the State of Connecticut has been damaged in an amount far in excess of millions of dollars exclusive of interest.

227.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Connecticut False Claims Act on behalf of himself and the State of Connecticut.

228.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Connecticut in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

a.    That by reason of the aforementioned violations of the Connecticut False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount equal to not less than two times and not more than three times the amount of damages that the state of Connecticut has sustained because of Covidien's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation;

b.      That Relator, as Qui Tam Plaintiff, be awarded the maximum amount

allowed pursuant to Conn. Gen. Stat. § 17b-301a et seq. and/or any other applicable

provision of law;

c.      That Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs incurred in the prosecution of this suit; and

d.      That Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XXXII

**Maryland False Health Claims Act of 2010**
**Subtitle 6, False Claims Against State Health Plans and**
**State Health Programs, §2-601 et seq.**

229.    Relator realleges and incorporates by reference the prior paragraphs as though

fully set forth herein.

230.    This is a qui tam action brought by Plaintiff-Relator on behalf of the State of

Maryland to recover treble damages and civil penalties under the Maryland False Claims Act,

MD Code, Health - General, § 2-601, et seq.

231.    Section 2-602 of Maryland's False Claim Act imposes liability as follows:

(a) A person may not:
   (1) Knowingly present or cause to be presented a false or fraudulent claim for
       payment or approval;
   (2) Knowingly make, use, or cause to be made or used a false record or
       statement material to a false or fraudulent claim;
   (3) Conspire to commit a violation under this subtitle;
   (4) Have possession, custody, or control of money or other property used by
       or on behalf of the State under a State health plan or a State health
       program and knowingly deliver or cause to be delivered to the State less
       than all of that money or other property;

(5)    (i)    Be authorized to make or deliver a receipt or other
document certifying receipt of money or other property used or to
be used by the State under a State health plan or a State health
program; and

(ii)    Intending to defraud the State or the Department, make or
deliver a receipt or document knowing that the information
contained in the receipt or document is not true;

(6) Knowingly buy or receive as a pledge of an obligation or debt publicly
owned property from an officer, employee, or agent of a State health plan
or a State health program who lawfully may not sell or pledge the
property;

(7) Knowingly make, use, or cause to be made or used, a false record or
statement material to an obligation to pay or transmit money or other
property to the State;

(8) Knowingly conceal, or knowingly and improperly avoid or decrease, an
obligation to pay or transmit money or other property to the State; or

(9) Knowingly make any other false or fraudulent claim against a State health
plan or a State health program.

232.    In addition, MD Code, Criminal Law, § 8-512, prohibits the solicitation or receipt

of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any item or service for which payment may

be made in whole or in part under the Maryland Medicaid program.

233.    Defendant Covidien violated the Maryland False Claims Act by engaging in the

conduct alleged herein.

234.    Defendant Covidien further violated the Maryland False Claims Act, and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of Maryland by its deliberate and systematic violation of federal and state laws, including

the FDCA, federal Anti-Kickback Act and Section 8-512 of Maryland's Criminal Law, and by

virtue of the fact that none of the claims submitted in connection with its conduct were even

eligible for reimbursement by the government-funded healthcare programs.

235. The State of Maryland, by and through the Maryland Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

236. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendant Covidien's conduct. Compliance with applicable Maryland statutes and regulations was also an express condition of payment of claims submitted to the State of Maryland.

237. Had the State of Maryland known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

238. As a result of Defendant Covidien's violations of the Maryland False Claims Act, the State of Maryland has been damaged in an amount far in excess of millions of dollars exclusive of interest.

239. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Maryland False Claims Act on behalf of herself and the State of Maryland.

240.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

a.     That by reason of the aforementioned violations of the Maryland False Claims provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount no more than three times the amount of damages that the state of Maryland has sustained because of Covidien's actions, plus a civil penalty of not more than $10,000 for each violation;

b.     That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to MD Code, Health - General, § 2-601, et seq. and/or any other applicable provision of law;

c.     That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.     That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXXIII

### Washington Medicaid False Claims Act

241.     This is a qui tam action brought by Relator on behalf of the State of Washington to recover treble damages and civil penalties under the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq.

242.   RCWA 74.66.020 in pertinent part provides for liability for any person who:

    (a) Knowingly presents, or causes to be presented, a false or fraudulent
        claim for payment or approval;

    (b) Knowingly makes, uses, or causes to be made or used, a false record or
        statement material to a false or fraudulent claim;

    (c) Conspires to commit one or more of the violations in this subsection (1).

243.   In addition, RCWA 74.09.240, prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Washington Medicaid program.

244.   Defendant Covidien violated RCWA 74.09.240 by engaging in the conduct

described herein.

245.   Defendant Covidien furthermore violated the Washington Medicaid Fraud

Act, RCWA 74.66.005 ei seq. and knowingly caused hundreds of thousands of claims to be

made, used and presented to the State of Washington by its deliberate and systematic violation

of federal and state laws, including the FDCA, federal Anti-Kickback Act, and RCWA

74.09.240, and by virtue of the fact that none of the claims submitted in connection with its

conduct were even eligible for reimbursement by the government-funded healthcare programs.

246.   The State of Washington, by and through the Washington Medicaid program and

other state healthcare programs, and unaware of Defendant Covidien's conduct, paid the claims

submitted by healthcare providers and third party payers in connection therewith.

247.   Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of Washington in connection with

Defendant's conduct. Compliance with applicable Washington statutes and regulations was also an express condition of payment of claims submitted to the State of Washington.

248.     Had the State of Washington known that Defendant Covidien was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

249.     As a result of Defendant Covidien's violations of the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq., the State of Washington has been damaged in an amount far in excess of millions of dollars exclusive of interest.

250.     Relator is a private citizen with direct and independent knowledge of the allegations in this Complaint who has brought this action pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq. on behalf of herself and the State of Washington.

251.     This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Washington in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

      a.     That by reason of the aforementioned violations of the Washington Medicaid Fraud Act provisions that this Court enter judgment in Plaintiff's favor and against Covidien in an amount no more than three times the amount of damages that

the State of Washington has sustained because of Covidien's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation;

b.  That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to RCWA 74.66.005, et seq. and/or any other applicable provision of law;

c.  That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d.  That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38, Plaintiff demands a trial by jury on all counts.

May 5, 2014                                        Respectfully submitted,

Claudine Q. Homolash, Esquire
Attorney Registration No. 5079785
**CQH FIRM**
One Commerce Square
2005 Market Street, 22nd Floor
Philadelphia, PA 19103
Phone: 215-965-1320
Fax: 215-965-1331
Email: claudine@cqhfirm.com

Attorney for Relator